IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY PLOSS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRAFT FOODS GROUP, INC. and ) <br> MONDELĒZ GLOBAL LLC, ) <br> ) <br> Defendants. ) <br> ) | No. 15-cv-2937 <br><br> Honorable Edmond E. Chang |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO NOTICE OF
SUPPLEMENTAL AUTHORITY**

Filing a response to a notice of *supplemental authority* is an *improper* occasion to re-argue a pending motion, and do so by asserting facts outside the pleadings. *See Gambino v. Index Sales Corp.*, 673 F. Supp. 1450, 1453 n.4 (N.D. Ill. 1987) (describing counsel's argument in response to supplemental authority as "out of order" and inconsistent with the "wholly neutral course of conduct counsel should [] follow"); *accord Holmes v. Razo*, No. 94 C 50405, 1995 U.S. Dist. LEXIS 10599, at *10 n.2 (N.D. Ill. July 18, 1995). But that is exactly what Defendants have done here. This Court granted Plaintiffs leave to file Judge Blakey's recent decision in *United States CFTC v. Kraft Foods Grp., Inc.*, No. 15 C 2881, 2015 U.S. Dist. LEXIS 169754 (N.D. Ill. Dec. 18, 2015) ("*CFTC v. Kraft*") (Dkt. No. 95). Plaintiffs did not present any argument but merely called a new, relevant judicial opinion to this Court's attention. Defendants' extensive fact-based and legal arguments filed in response (*see* Dkt. No. 98), which often avoid even discussing *CFTC v. Kraft*, are inappropriate and also lack merit. This Court may properly rely on the carefully reasoned and correctly decided *CFTC v. Kraft* decision to inform its own

decision on Defendants' pending motion to dismiss (Dkt. No. 76). If the Court considers Defendants' arguments, Plaintiffs respectfully respond as follows:

1. **Defendants' Statute of Limitations Argument Is Beyond the Scope of *CFTC v. Kraft* and Wholly Inappropriate**

Defendants' statute of limitations argument is blatantly improper. It is nothing more than an attempt to reargue a basis for their motion to dismiss that was not even addressed in *CFTC v. Kraft*, and thus has no bearing on whether *CFTC v. Kraft* is correctly decided.[1] The logic of the *CFTC v. Kraft* opinion, which resists defendants' invitation that the court make fact-based findings at the motion to dismiss stage, undermines Defendants' inherently fact-based challenge to the timeliness of Plaintiffs' claims. In any event, it is not possible to conclude as a matter of law that Kraft's transactions, which were intended to send a false signal to the market, triggered inquiry notice as Defendants themselves contend that Kraft's "massive long position could have signaled many things." *CFTC v. Kraft*, 2015 U.S. Dist. LEXIS 169754, *38.

2. **Defendants' Fact-Based Arguments Are Improper on a Motion to Dismiss**

Defendants contend that *CFTC v. Kraft* improperly re-writes the rules and regulations regarding hedging activities and errs as to what may be considered "legitimate demand." Defendants also argue that even if the allegations of Defendants' intent to alter cash wheat and wheat futures prices through their transactions are true, they are reflective of "permissible arbitrage" and not manipulation. These contentions are not pure questions of law; they presuppose that Defendants engaged in *bona fide* hedging transactions and/or arbitrage activities consistent with the Commodity Futures Trading Commission's (the "Commission") existing rules and regulations. The Commission in *CFTC v. Kraft* (and Plaintiffs in the present case) do

---

[1] Plaintiffs addressed Defendants' timeliness argument in their opposition to Defendants' motion to dismiss. *See* ECF No. 87 at 33-35.

2

not allege that Defendants were engaged in *bona fide* hedging transactions or arbitrage. Defendants engaged in manipulative conduct that caused cash wheat and wheat futures prices to be artificial. The *CFTC v. Kraft* court properly accepted these allegations as true, drew all reasonable inferences in the Commission's favor, *see Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013), and denied Defendants' motion to dismiss. Defendants' disagreement with *CFTC v. Kraft* on these factual grounds—which forms the central premise for their legal argument—should be disregarded.

3. **Defendants Do Not Cite Any Law that Supports Their Claims of Legal Error**

Defendants' argument that *CFTC v. Kraft* failed to follow *Sullivan & Long v. Scattered Corp.*, 47 F.3d 857 (7th Cir. 1995) is based on Defendants' oft-repeated factual assertion that their trading was merely legitimate open market activity, something neither the Commission (nor Plaintiffs here) have alleged. The *CFTC v. Kraft* court did not "decline to follow" *Sullivan & Long*;[2] the case is simply distinguishable on its facts.[3] In *Sullivan & Long*, "the short seller [was] not trying to deceive the market about what he [was] doing," 47 F.3d at 863, but traded on information in a *publicly disclosed* plan of reorganization that had not been noticed by investors

---

[2] *CFTC v. Kraft* cited *Sullivan & Long. See* 2015 U.S. Dist. LEXIS 16975, at *25.

[3] Defendants' arguments rely on the mistaken premise that Securities Exchange Act of 1934 § 10(b) case law controls where claims are based on the Commodity Exchange Act ("CEA") anti-fraud provision analogue, § 6(c)(1) and the enacting regulation, 17 C.F.R. § 180.1 ("CFTC Rule 180.1"). In promulgating CFTC Rule 180.1, the Commission expressly announced that "[t]o account for the differences between the securities markets and the derivatives markets, the Commission will be guided, *but not controlled*, by the substantial body of judicial precedent applying the comparable language of SEC Rule 10b-5." Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41398, 41399 (July 14, 2011) (emphasis added). CEA § 6(c)(1) and CFTC Rule 180.1 were written to be flexible and to reach "transactions related to the . . . prices of commodities in interstate commerce, or where the fraud or manipulation has the potential to affect cash commodity, futures, or swaps markets or participants in these markets," including circumstances where the "use or employment of a manipulative or deceptive device or contrivance . . . may exist in the absence of any market or price effect." *Id.* at 41401.

or brokers. *Id.* at 858-60. Selling short, therefore, was not manipulative; as alleged, such trading merely eliminated disparities between the market price and the publicly disclosed value of the stock.

Defendants next suggest that the *CFTC v. Kraft* court improperly applied *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007). But the court merely looked to *ATSI*, as well as to *DH2, Inc. v. Athanassiades*, 404 F. Supp. 2d. 1083 (N.D. Ill. 2005), for the "pleading standards for fraudulent manipulation claims that flow from the Supreme Court's view that manipulation is 'intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *CFTC v. Kraft*, 2015 U.S. Dist. LEXIS 169754, at *29-30 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)). *CFTC v. Kraft* adopted the four-part test for pleading fraudulent manipulation used in these cases, and held that a well-pled manipulation claim under § 6(c)(1) and CFTC Rule 180.1 must allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the commodities at issue." *Id.* at *31 (citations omitted). *CFTC v. Kraft* determined that this standard had been amply met, finding that "(1) Kraft took a huge wheat futures position; (2) that it did not intend to use in production; (3) but instead intended that the position would signal Kraft's demand for wheat in the relevant time period; (4) in a way that would mislead others in the market into thinking that Kraft would take delivery of its futures position and not buy cash wheat; (5) which was intended to, and in fact did, cause cash wheat prices to decrease and the price for futures to increase." The court rejected Kraft's claim that the Commission must plead and prove that the market received "a message from Kraft" that was different from its true intent because "Kraft sought to create the false appearance of demand . . ." and in fact did. *Id.* at *37.

Defendants do not point to a single CEA case to support their claim that the *CFTC v. Kraft* court misapplied either Second or Seventh Circuit precedent in finding that Defendants' purchase of a large quantity of wheat futures was sufficient in part to adequately plead manipulation. On the contrary, such a finding is supported by case law on which the *CFTC v. Kraft* court relied. *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008); *United States Commodity Futures Trading Commission v. Enron*, No. H-03-909, 2004 U.S. Dist. LEXIS 28794, at *14-15 (S.D. Tex. Mar. 10, 2004).

*In re Amaranth* applies *ATSI*'s pleading standard in the CEA context. *ATSI* makes clear "[t]o be actionable as a manipulative act, [otherwise legal, open market activity] must be willfully combined with something more to create a false impression of how market participants value a security." 493 F.3d at 101. *In re Amaranth* holds that the "something more" can be:

> anything that distinguishes a transaction made for legitimate economic purposes from an attempted manipulation. Because every transaction signals that the buyer and seller have legitimate economic motives for the transaction, if either party lacks that motivation, the signal is inaccurate. *Thus, a legitimate transaction combined with an improper motive is commodities manipulation*.

*In re Amaranth*, 587 F. Supp. 2d at 534 (emphasis added).[4] The *CFTC v. Kraft* court applied *In re Amaranth* and properly found that the complaint contained "both direct and circumstantial evidence of intent," *CFTC v. Kraft*, 2015 U.S. Dist. LEXIS 169754, at * 55, including emails "demonstrat[ing] that Kraft intended that its futures position would manipulate both the market for cash wheat and the market for wheat futures." *Id.* at *42. The *CFTC v. Kraft* court rejected Defendants' argument that the Commission must allege "how" Defendants' allegedly misled the

---

[4] Defendants' reliance on *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001), a § 10(b) stock case, is misplaced as that case in no way contradicts the *CFTC v. Kraft* court's holding; under the CEA, legitimate trading strategies can be distinguished from manipulative conduct through direct and circumstantial evidence of intent of the kind alleged in *CFTC v. Kraft* (and in the present case). *See In re Amaranth*, 587 F. Supp. 2d at 534.

5

market as to its intended use of wheat futures, stating "[t]he law … imposes no such pleading requirement." *Id.* at *37. Nevertheless, the court summed up exactly how Defendants' misled the market:

> Quite simply, [Defendants] sought to create the false appearance of demand for wheat from the December 2011 futures contract. [Defendants] had no intention to use the wheat from [their] huge futures position. Thus, [Defendants], through [their] activities in the market, conveyed a false sense of demand, and the resulting prices in the market (both of cash wheat and of wheat futures) were based not solely on the actual supply and demand in the market, but rather were influenced by [Defendants'] false signals of demand.

*Id.* at *37-38.

Finally, Defendants contest *CFTC v. Kraft*'s holding that the convergence experienced between cash wheat and wheat futures prices was artificial, but fail to cite a single case that holds price convergence occurs only in the absence of artificial prices. The *CFTC v. Kraft* court does not reject the theory that market prices should converge. *See id.* at *61. Rather, the court recognizes that convergence will occur if there are normal supply and demand forces; however the converse, that there are only normal supply and demand forces at play if prices converge, is not necessarily true: "the prices created by [Defendants'] actions were artificial [*i.e.*, not caused by normal supply and demand factors], and thus the degree of convergence was artificial." *Id.* The *CFTC v. Kraft* decision, in no way ignores the purposes of futures markets.

For the reasons stated above, the *CFTC v. Kraft* is persuasive authority that supports denial of Defendants' motion to dismiss Plaintiffs' claims.

**DATED**: January 28, 2016

*/s/ Christopher Lovell*
Christopher Lovell
**LOVELL STEWART HALEBIAN
    JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900

*Interim Class Counsel*

Jamison A. Diehl
**Jamison A. Diehl LLC**
420 Lexington Avenue, Suite 2440
New York, NY 10170
Telephone: (212) 500-5049

*Additional Plaintiffs' Counsel*

*/s/ Vincent Briganti*
Vincent Briganti
Geoffrey M. Horn
**LOWEY DANNENBERG COHEN
    & HART, P.C**
One North Broadway
White Plains, New York 10601
Telephone: (914) 997-0500

*Interim Class Counsel*

*/s/ Marvin A. Miller*
Marvin A. Miller
**MILLER LAW LLC**
115 South LaSalle St., Suite 2910
Chicago, Illinois 60603
Telephone: (312) 332-3400

*Liaison Counsel*

**CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

I, Marvin Miller, one of the attorneys for plaintiff, hereby certify that on February 2, 2016, service of the foregoing document was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

    /s/    *Marvin A. Miller*
Marvin A. Miller