UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

x----------------------------------------------------------------
HARRY PLOSS, as Trustee for the
HARRY PLOSS TRUST DTD 8/16/1993, on
behalf of Plaintiffs and all others similarly situated,

                 Plaintiff,

        -*against*-

KRAFT FOOD GROUP, INC. and
MONDELEZ GLOBAL LLC,

                Defendants.
----------------------------------------------------------------x

No. 15-cv-2937

Honorable Edmond E. Chang

**PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH PLAINTIFFS'
SUBPOENA *DUCES TECUM* ISSUED TO ARCHER DANIELS MIDLAND COMPANY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

I. PLAINTIFFS TRIED TO RESOLVE THE DISPUTE WITHOUT COURT
   INTERVENTION ................................................................................................................ 3

II. LEGAL STANDARD ........................................................................................................... 5

III. ARGUMENT ........................................................................................................................ 6

    A.    The Information Sought by The Subpoena Is Relevant, Non-Privileged and
    Proportional to the Needs of This Commodity Futures Manipulation Case ....................... 6

        1.    The Subpoena Seeks Information Relevant to *Both* Plaintiffs' Claims and
        Defendants' Defenses ................................................................................................ 7

        2.    The Information Sought by The Subpoena Is "Proportional to The Needs"
        Of This Complex and Important Case ....................................................................... 9

    B.    ADM's Unsupported, Boilerplate Objections are Insufficient to Satisfy Its Burden
    to Demonstrate the Discovery Sought is Improper ............................................................ 10

CONCLUSION ............................................................................................................................. 12

i

**TABLE OF AUTHORITIES**

**Cases**                                                                             **Pages**

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
No. 12-CV-7493, 2012 WL 6568226 (N.D. Ill. Dec. 14, 2012) .................................... 6, 10, 11

*Cange v. Stotler & Co.*,
826 F.2d 581 (7th Cir. 1987) ............................................................................................... 9

*Cargill, Inc. v. Hardin*,
452 F.2d 1154 (8th Cir. 1971) ............................................................................................. 9

*CFTC v. Kraft Foods Group, Inc. and Mondelez Global LLC*,
15 Civ. 2881 (N.D. Ill.) ........................................................................................................ 3

*Grayson v. City of Aurora*,
No. 13 C, 1705, 2013 WL 6697769 (N.D. Ill. Dec 19, 2013) ............................................. 6

*Miller v. City of Plymouth*,
No. 9-cv-205-JVB-PRC, 2010 WL 1754028 (N.D. Ind. Apr. 29, 2010) .............................. 6

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ............................................................................................................ 6

*Pac. Century Int'l, Ltd. V. Does 1-37*,
282 F.R.D. 189 (N.D. Ill. 2012) .......................................................................................... 6

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*,
875 F. Supp. 2d 233 (S.D.N.Y. 2012) ................................................................................. 8

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*,
No. 11-cv-3543 WHP, 2013 WL 5882921 (S.D.N.Y. Oct. 25, 2013) ................................. 2

*Young v. City of Chicago*,
No. 13 c 5651, 2017 WL 25170 (N.D. Ill. 2017) ................................................................ 6

**Statutes**

15 U.S.C. §2 ............................................................................................................................... 2
7 U.S.C. §1 ................................................................................................................................. 1

**Rules**

FED. R. CIV. P. 26(b)(1) ......................................................................................................... 1, 6
FED. R. CIV. P. 34(a) ................................................................................................................. 6

FED. R. CIV. P. 45 (1991) ...........................................................................................................................6
Fed. R. Civ. P. 45(d)(2)(B)(i) ....................................................................................................................5

Pursuant to Federal Rules of Civil Procedure 37 and 45, Plaintiffs[1] respectfully submit this motion to compel Archer Daniels Midland Company ("ADM") to produce documents in response to Plaintiffs' subpoena *duces tecum*. *See* Exhibit 1.

## PRELIMINARY STATEMENT

Plaintiffs have served document subpoenas on ADM and 28 other large grain merchants and elevator operators in the United States. *See* Section "II.A.1" below. Plaintiffs' subpoenas seek seven categories of documents concerning the quantity, quality, location, and price of wheat in the cash market. *Id.* ADM— one of two significant suppliers of wheat in the Toledo, Ohio area—is the only grain elevator that has stonewalled Plaintiffs' document requests. *Id.*

**The Discovery is Relevant**. Plaintiffs allege that Defendants'[2] departure from their normal conduct of sourcing wheat in the cash market in 2011 was uneconomic. *E.g.*, ECF No. 71 ("Complaint"), ¶¶1-7, 50-52, 79-93. Plaintiffs further allege that Defendants' large delivery in the futures market was manipulative; it did not provide Defendants with the right wheat, at the right time, in the right place. *Id.* Defendants contend (and Plaintiffs dispute) that conditions in the cash market (such as supposedly unreasonably high prices in the Toledo, Ohio area) made taking a large delivery in the futures market a commercially reasonable alternative to the cash market. *E.g.*, ECF No. 77, pp. 1-2.

Accordingly, supply and demand conditions in the cash market for wheat are relevant to multiple claims and defenses in this case. *See* Fed. R. Civ. P. 26(b)(1) (discovery need only be relevant to a single claim or defense); Section "II" below (relevancy is "construed broadly"); Section "III.A.1" below (the discovery sought is relevant to ability to influence price element of Plaintiffs' claim for manipulation in violation of the Commodity Exchange Act, 7 U.S.C. §1 *et seq*. ("CEA")

---

[1] "Plaintiffs" are Harry Ploss, Harry Ploss Trust DTD 8/16/1993, Richard Dennis, Budicak Inc., Joseph Caprino, Kevin Brown, White Oak Fund LP, Henrik Christensen, and Robert Wallace.
[2] "Defendants" are Kraft Food Group, Inc. and Mondelez Global LLC.

and further relevant to monopoly power inquiry for Plaintiffs' monopoly claim under the Sherman Antitrust Act, 15 U.S.C. §2 *et seq.* ("Sherman Act")).

**The Discovery is Proportional to the Needs of the Case**. Commodity futures manipulation cases, particularly cases like this one involving a physical delivery futures contract, require fact intensive inquiries into supply-demand conditions of the underlying commodity. *See, e.g., U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11-cv-3543 WHP, 2013 WL 5882921 (S.D.N.Y. Oct. 25, 2013), *aff'd*, 593 F. App'x 32 (2d Cir. 2014) (ordering production of millions of pages of documents from numerous non-parties in the crude oil cash market, including information about physical crude oil supplies and inventories, in action alleging manipulation of crude oil futures market).

The discovery sought by the subpoena is "proportional to the needs" of this case under *each* of the six criteria identified in Rule 26(b)(1): 1) the discovery sought is important to resolving key issues concerning the cash market for wheat; 2) ADM has much greater access to this information relative to Plaintiffs; 3) ADM has considerable resources that are far greater than that of the Plaintiffs; 4) the issues at stake in this action involve important public interests; 5) the amount in controversy is significant; and 6) any burden on ADM is outweighed by the benefits of the requested discovery. *See* Rule 26(b)(1); Section "III.A.2" below.

**ADM has Failed its Burden to Demonstrate the Discovery is Improper**. As the party opposing the discovery, ADM must demonstrate "with specificity" that the requested discovery is improper. *See* Section "III.B." below. ADM's unsupported, boilerplate objections fall short of satisfying its burden. *Id.* To succeed on its primary objection, "undue burden," ADM must show "affirmative and compelling proof." *Id.* Instead, ADM has merely asserted with no evidentiary support that to comply with the subpoena it would have to make individual inquiries at each of its 200-plus grain facilities. *Id.* This Court has held that these types of "bald assertions" are insufficient

2

to demonstrate undue burden. *Id.* Moreover, ADM's position strains credulity—it would have Plaintiffs, and this Court, believe that a publicly traded, global food processing and commodities trading behemoth cannot say how much wheat it is storing or where that wheat is on any given day without making hundreds of individual inquiries. *Id.* Plaintiffs' skepticism is warranted: ADM's counsel said during the meet and confer process that it would be burdensome for ADM even to inquire about and articulate the burden associated with responding to Plaintiffs' subpoena. *See* Section "I" below.[3]

Given ADM's refusal to respond to the subpoena or even negotiate in good faith like every other subpoena recipient, Plaintiffs respectfully request that the Court enter an order compelling ADM to provide all non-privileged documents responsive to the seven requests in Plaintiffs' subpoena.

## I. PLAINTIFFS TRIED TO RESOLVE THE DISPUTE WITHOUT COURT INTERVENTION

**Local Rule 37.2**. Before filing this motion, Plaintiffs conferred multiple times with ADM's counsel in a good faith attempt to resolve the discovery issues presented here without Court intervention. *See* Rule 37.2 of the Local Rules of the United States District Court, Northern District of Illinois ("Local Rules"); *see also* this Court's Case Procedures. At each of the three meet-and-

---

[3] ADM's refusal to respond to Plaintiffs' subpoena absent a Court Order is part of a broad pattern of stonewalling. Earlier in this case, ADM was the only non-party (out of fourteen) to object to a Rule 34 document request Plaintiffs served on Defendants seeking information produced in *CFTC v. Kraft Foods Group, Inc. and Mondelez Global LLC*, 15 Civ. 2881 (N.D. Ill.) ("CFTC Action"). ECF No. 151. This Court rejected ADM's objections. ECF No. 150. ADM has refused to comply with a document subpoena issued by Defendants in the CFTC Action. CFTC Action, ECF No. 164. Judge Blakey recently rejected ADM's arguments that it should not have to provide any information in response to Defendants' subpoena (beyond a nominal 145-page production) and ordered further negotiations. *Id.*, ECF No. 182. Plaintiffs reached out to ADM for a *third time* following Judge Blakey's order in the CFTC Action. Section "I" below. However, ADM's position on Plaintiffs' subpoena remains unchanged. It will not respond absent an order by this Court. *Id.*

3

confers between Plaintiffs and ADM, ADM said it would not respond to Plaintiffs' subpoena absent Court order.

**First Meet and Confer.** Plaintiffs served their subpoena on ADM on May 16, 2017. *See* Exhibit 1. ADM served objections on May 30, 2017. *See* Exhibit 2. Plaintiffs and ADM conducted an initial meet-and-confer by telephone on July 5, 2017.[4] During the July 5 call, Plaintiffs detailed the relevance and the purpose of their subpoena. ADM reiterated its objections, stating that the subpoena was an overly burdensome "fishing expedition." In response, Plaintiffs requested that ADM elaborate on: (1) what responsive, non-privileged documents ADM has in its possession; and (2) what makes the production of those documents unduly burdensome. ADM agreed to a follow-up call to discuss Plaintiffs' inquiries. But ADM stated it did not anticipate changing its position or substantively responding to the subpoena based on any continued negotiations.

**Second Meet and Confer**. The same attorneys conducted a second telephone meet-and-confer a week later on July 12, 2017. ADM reiterated its burden objection. Plaintiffs suggested that ADM, instead of merely speculating about burden, inquire about the availability of responsive information and what would be required to produce that information. ADM indicated that because it controlled over 200 locations, any attempt to comply with the subpoena, or even explain to Plaintiffs the supposed burden associated with responding to the subpoena, would itself require a burdensome undertaking involving many individual inquiries.

Plaintiffs asked if narrowing the scope of the subpoena would persuade ADM to at least investigate whether they could respond. Counsel for ADM declined. Plaintiffs asked how data are stored at ADM's locations. Counsel for ADM refused to respond. Plaintiffs asked if ADM would discuss the parameters under which it agreed to produce (minimal) documents in response to

---

[4] Raymond Girnys and Lee Lefkowitz of Lowey Dannenberg, P.C. participated on behalf of Plaintiffs. William Nissen and Angelo Suozzi of Sidley Austin LLP participated on behalf of ADM.

4

Defendants' document subpoena in the CFTC Action. ADM's counsel refused. Ultimately, ADM said that unless Plaintiffs could point to a specific allegation in the Complaint concerning a specific date or event that implicates ADM, at a specific ADM facility, then ADM would not produce any materials in response to Plaintiffs' subpoena. In light of ADM's stonewalling, Plaintiffs asked whether it made sense to continue to meet-and-confer. ADM said it would not respond to the subpoena absent Court order.

**Third Meet and Confer**. On August 25, 2017, the same counsel held a third and final meet and confer by telephone. Plaintiffs asked ADM if it would reconsider its position given that Judge Blakey had recently ordered ADM and Kraft to engage further after Defendants moved to compel ADM's compliance with its subpoena issued in the CFTC Action. CFTC Action, ECF No. 182.[5] Plaintiffs specifically offered to narrow the scope of the relevant time period and types of wheat covered by the subpoena. ADM refused and instead said it would agree to produce to Plaintiffs whatever information it was ultimately ordered to produce in the CFTC Action. This "concession" is meaningless. First, Plaintiffs' subpoena does not request information sought by Kraft's subpoena in the CFTC Action. *Compare* Exhibit 1 (Plaintiffs' subpoena to ADM in this case) *with* Exhibit 3 (Defendants' subpoena to ADM in the CFTC Action). Second, as ADM knows, Plaintiffs are already entitled to that information. ECF Nos. 150, 155.

## II. LEGAL STANDARD

District courts have the power to compel compliance with subpoenas. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). Under Rule 45, a "non-party witness is subject to the same scope of discovery. . .as

---

[5] In response to Kraft's subpoena in the CFTC Action, ADM produced 144 pages of hard copy documents and a single Excel spreadsheet. The Excel spreadsheet appears to reflect purchases and sales of physical wheat during the second half of 2011. Plaintiffs' subpoena did not request this information. Exhibit 1, *passim*. The hard copy information consists almost entirely of what appear to be daily bid sheets for the second half of 2011. This information is partially responsive to one of Plaintiff's requests (request six), although Plaintiffs' drafted request six specifically to exclude information produced by ADM in the CFTC Action. Exhibit 1, p. 5.

5

that person would be as a party to whom a request is addressed pursuant to Rule 34." FED. R. CIV. P. 45 (1991) (advisory committee note). Rule 34 permits discovery in accordance with Rule 26(b)(1). *See* FED. R. CIV. P. 34(a). Rule 26(b)(1) provides for "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of whether the information is admissible as evidence. FED. R. CIV. P. 26(b)(1).

Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Grayson v. City of Aurora*, No. 13 C 1705, 2013 WL 6697769, at *2 (N.D. Ill. Dec 19, 2013). Proportionality is determined by the six criteria identified in Rule 26(b)(1): "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party opposing discovery bears the burden of demonstrating, with "specificity," that the requested discovery is improper. *Compare Young v. City of Chicago*, No. 13 c 5651, 2017 WL 25170, at *9 (N.D. Ill. 2017) (quoting *Pac. Century Int'l, Ltd. V. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) ("[t]he party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant") *with Young*, 2017 WL 25170, at *9 (quoting *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2010 WL 1754028, at *15 (N.D. Ind. Apr. 29, 2010) ("[t]he objecting party must meet its burden 'with specificity.'"). A demonstration of undue burden requires "affirmative and compelling proof." *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12-CV-7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012).

### III. ARGUMENT

    **A.    The Information Sought by The Subpoena Is Relevant, Non-Privileged and Proportional to the Needs of This Commodity Futures Manipulation Case**

6

### 1. The Subpoena Seeks Information Relevant to *Both* Plaintiffs' Claims and Defendants' Defenses

The state of affairs in the cash market for wheat is relevant to both Plaintiffs' claims *and* Defendants' defenses. *See* Rule 26(b)(1). Plaintiffs allege that Defendants' departure from their normal conduct of sourcing wheat in the cash market was manipulative and uneconomic. *E.g.*, Complaint, ¶¶1-7, 50-52, 79-93. Defendants contend (and Plaintiffs dispute) that conditions in the cash market made taking a large delivery in the futures market a commercially reasonable alternative to the cash market. *E.g.*, ECF No. 77, pp. 1-2.

Accordingly, Plaintiffs served identical document subpoenas on 29 of the largest grain merchants and elevator operators in the United States, including ADM. The records sought by the subpoenas are one way (but not the only way) Plaintiffs may establish that Kraft's large delivery was manipulative and uneconomic. So far, ADM is the only grain merchant that Plaintiffs subpoenaed that has refused to produce any information. The seven document requests are detailed below.[6]

**Request Nos. 1 – 5.** These five requests seek "documents sufficient to show" basic information: the names, locations, storage capacities and loading rates of elevators owned or controlled by ADM that stored wheat during the relevant period, the volumes and grades of wheat held in these elevators, how much of the stored wheat was available for purchase. and how much was otherwise not available for purchase because it was already committed to some use. *See* Exhibit 1, pp. 4-5. Among other things, the requested information is relevant to determine the supplies of

---

[6] The subpoena is limited to the specific types of "wheat" identified in CBOT rules as deliverable against the CBOT wheat futures contract that is the subject of this litigation. *Compare* CBOT Rule 14104 (http://www.cmegroup.com/rulebook/CBOT/II/14/14.pdf) *with* Exhibit 1, Definitions. The relevant period for the subpoena is January 2011 through May 2012. Exhibit 1, Definitions. This period was chosen in order to cover the 2011/2012 crop year at issue in this case. The 2011/2012 crop was planted around September 2010, harvested around June 2011, and the following year's crop would not have been available until harvest around June 2012. Plaintiffs have negotiated shorter time periods (*e.g.*, June through December 2011) with many subpoena recipients.

wheat that were potentially available for purchase in the cash market and the supplies potentially available for delivery in satisfaction of a CBOT wheat futures contract. A so-called "deliverable supply" analysis is one way, although not the only way, Plaintiffs may establish Defendants' ability to influence prices (one of the four elements of a CEA manipulation claim). *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 245 (S.D.N.Y. 2012) (ability to influence price element of CEA manipulation may be established by analyzing deliverable supply, *i.e.*, the supply of a commodity readily available for delivery at a specified time). The requested information is also pertinent to a "relevant market" analysis, which is one way, but not the only way, Plaintiffs may show possession of monopoly power. *Id.*[7]

**Request No. 6**. This request seeks "documents sufficient to show" the "material terms" of ADM offers to sell, or bids to buy, physical wheat. Exhibit 1, p. 8. But only to the extent such information was not previously produced by ADM in the response to Kraft's subpoena issued in the CFTC Action. *Id.* This price information is one way that Plaintiffs may establish that Defendants' actions avoiding the cash market and instead sourcing wheat in the futures market through a large delivery were manipulative and uneconomic.[8]

**Request No. 7**. This request seeks submissions by ADM to the United States Department of Agriculture ("USDA") concerning wheat to extent that such documents were not otherwise requested by the subpoena. Exhibit 1, p. 5. The USDA collects certain information about wheat from market participants like ADM, including quarterly information about wheat stocks. Again, information about the quantity and location of wheat is relevant to the issues of deliverable supply and relevant market. ADM's objections effectively concede that it provided relevant information to

---

[7] The CFTC Action does not involve a monopoly claim under the Sherman Act. CFTC Action, ECF No. 1.
[8] Unlike the CFTC, the private Plaintiffs will be required to establish the amounts of artificial impact on CBOT wheat futures contracts in connection with their CEA and monopoly claims. Thus, Plaintiffs need additional and different records than the CFTC.

8

the USDA. Exhibit 2, p. 2. This information should be able to be produced by ADM without any additional work. Contrary to ADM's position, Plaintiffs cannot obtain this information directly from the USDA. *See* "B" below.

> 2. **The Information Sought by The Subpoena Is "Proportional to The Needs" Of This Complex and Important Case**

Production of the information sought by the subpoena is "proportional to the needs" of this case under each of the six criteria identified in Rule 26(b)(1).

**The discovery sought is important to resolving key issues in this action**. The discovery can help resolve several key questions in this case: how much wheat was being stored in the cash market, where was the wheat being stored, what was the quality of the wheat, was the wheat available for sale and, if so, at what price. Plaintiffs contend that it was uneconomic for Defendants to shun the cash market and instead take delivery of wheat in the futures market. *E.g.*, Complaint, ¶¶1-7, 50-52, 79-93. Defendants contend that the futures market was an economic alternative due to conditions in the cash market. *E.g.*, ECF No. 77, pp. 1-2. Thus, information sought by the subpoena concerning the quantity, quality, location, and price of wheat in the cash market provides one way for Plaintiffs to establish that Defendants' actions were manipulative and uneconomic.

**The parties' relative access to information favors production**. Absent production by ADM, Plaintiffs will not have access to information about conditions in the cash market for wheat from one of the largest grain merchants and elevator operators in the United States. Contrary to ADM's position, there is no alternative source for the granular information sought by the subpoena. *See* "B" below.

**The issues at stake in this action are important**. The issues at stake in this case are of significant interest to the public. The futures markets serve important societal functions, such as price discovery, efficient risk transfer, and price stabilization. *Cargill, Inc. v. Hardin,* 452 F.2d 1154, 1156-58 (8th Cir. 1971). Price manipulation destroys all three of these benefits. *Id.* Congress

9

viewed private lawsuits such as this one as "critical to protecting the public and fundamental to maintaining the credibility of the futures market." *Cange v. Stotler & Co.,* 826 F.2d 581, 594-595 (7th Cir. 1987) (*citing* to H.R. Rep. No. 565, 97th Cong., 2d Sess., pt. 1 at 56-7, *reprinted* in 1982 U.S. Code Cong. & Admin. News 3871, 3905-06).

**ADM has significantly more resources than Plaintiffs**. ADM's resources dwarf that of the Plaintiffs. ADM is a publicly traded company with a market cap of more than $24 billion. Its net sales in 2016 were $62.3 billion. https://www.adm.com/our-company/adm-facts.

**The amount in controversy is significant**. Damages estimates will likely be the subject of expert discovery, which has yet to occur. ECF No. 162. At this point, it is fair to say that the amount in controversy is in the millions of dollars.

**The likely benefits of the discovery sought outweighs any burden or expense**. The benefits of the highly relevant information sought by the subpoena (*see* "A.1" above) outweigh any burden or expense associated with the production of the information, which ADM has failed to demonstrate with the requisite particularity. *See* "B" below.

### B. ADM's Unsupported, Boilerplate Objections are Insufficient to Satisfy Its Burden to Demonstrate the Discovery Sought is Improper

ADM has the burden to demonstrate *with specificity* that the discovery sought is improper. *Young*, 2017 WL 25170, at *9. ADM's boilerplate objections—which concern only a fraction of the requested discovery—are wholly insufficient to carry its burden. *See* Exhibit 2 (ADM's objections).

*First*, ADM has not demonstrated undue burden with any degree of specificity, let alone the requisite "affirmative and compelling proof." *Ameritox*, 2012 WL 6568226, at *2. ADM has made the generic assertion that the subpoena is unduly burdensome because ADM is a large company with many facilities and compliance with the subpoena would supposedly require individual inquiry at each of ADM's facilities. When Plaintiffs asked ADM for more specificity about exactly how compliance would be burdensome, ADM's counsel told Plaintiffs that it would be burdensome to

10

even inquire! This is not sufficient to carry ADM's burden. *See, e.g., Ameritox*, 2012 WL 6568226, at *2 (denying motion to quash on basis of undue burden; "bald assertions" that subpoena would require 75 employees to search paper and electronic documents failed to demonstrate undue burden with particularity). As a practical matter, it is not credible that ADM is able to operate a global business without some type of central repository of basic information, like its stocks of wheat. Plaintiffs have negotiated and agreed to receive responsive productions from other large grain merchants with large numbers of facilities. But cooperation with ADM has been impossible. *See* "I" above. Its stated position has been that there are no limitations that could be placed on the subpoena that would sufficiently ease the supposed burden.

*Second*, ADM's relevancy objections are devoid of any explanation as to *what* specific information sought by the subpoena is not relevant or *why* any specific information sought by the subpoena is not relevant. Exhibit 2, *passim*. The subpoena clearly seeks information relevant to the claims and defenses in this action and can help resolve key disputed issues. *See* "A.1" above.

*Third*, ADM asserts that it is "not possible" for it to determine the daily loading rates for its grain elevators or identify the grades of wheat stored in its elevators, including whether such wheat satisfied CBOT standards. Exhibit 2, pp. 1-2. Again, this information (or its functional equivalent) would seem to be necessary to run a grain merchant business. But even if ADM's representations are true and not misleading, the fact that ADM may not have a small subset of the information requested by the subpoena is not a valid basis to refuse production of the responsive, non-privileged information it has admitted or effectively conceded that it possesses.

*Fourth,* ADM's overbreadth objection is premised upon (a) the fact that ADM operates more than 200 facilities in the United States and (b) the length of the subpoena's "relevant period" (*i.e.*, January 2011 through May 2012). Exhibit 2, p. 2. ADM's high number of facilities does not make the subpoena overbroad. Plaintiffs have sought information on a "documents sufficient to show"

11

basis and only for elevators that actually held wheat during the relevant period. *See* "A.1" above. The relevant period was chosen to capture the progression of the pertinent crop year at issue in this case. Section "A.1," fn. 6 above. In many instances, Plaintiffs have agreed to shorter time periods with other subpoena recipients. *Id.* These entities, unlike ADM, negotiated the parameters of the subpoena in good faith.

*Fifth*, the single "alternative source" identified by ADM (the USDA) relating to one of the seven requests in the subpoena (request seven) is not a viable alternative. Plaintiffs requested that USDA provide virtually the same information sought by the subpoena. The USDA refused.

*Finally*, ADM took the novel position during the meet and confer process that it will not provide any information in response to the subpoena unless Plaintiffs identify a specific event in this case in which ADM was involved. Even then, ADM would only consider providing documents concerning the specific event and location. Federal discovery rules, including Rule 26(b)(1), which governs the scope of discovery, impose no such requirement.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order compelling ADM to produce all non-privileged documents responsive to Plaintiffs' subpoena within 30 days.

Dated: September 18, 2017

| | |
|---|---|
| */s/ Christopher McGrath* | */s/ Vincent Briganti* |
| Christopher Lovell | Vincent Briganti |
| Christopher McGrath | Raymond Girnys |
| **LOVELL STEWART HALEBIAN** | Lee J. Lefkowitz |
|     **JACOBSON LLP** | **LOWEY DANNENBERG, P.C** |
| 61 Broadway, Suite 501 | 44 South Broadway, Suite 1100 |
| New York, New York 10006 | White Plains, New York 10601 |
| Telephone: (212) 608-1900 | Telephone: (914) 997-0500 |
| *Interim Class Counsel* | *Interim Class Counsel* |