**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HARRY PLOSS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 15 C 2937 |
| v. | ) | |
| | ) | Honorable Edmond E. Chang |
| KRAFT FOODS GROUP, INC. and | ) | |
| MONDELĒZ GLOBAL LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO EXCLUDE TESTIMONY OF DR. CRAIG PIRRONG AND SUPPLEMENT TO
DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION FILED IN
<u>ACCORDANCE WITH THE COURT'S INSTRUCTION AT DOCKET NO. 281</u>**

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

STANDARD OF ADMISSIBILITY FOR EXPERT TESTIMONY ................................. 7

ARGUMENT ........................................................................................................... 8

I.     Pirrong's Failure To Apply Generally Accepted Event Study Methodology Warrants
       Exclusion Of His Causation Opinion. ............................................................ 9

       A.   Accepted Event Study Methodology Requires, At A Minimum, That It Be Based
            On Actual Events And Control For Other Potential Causal Factors. .............. 9

       B.   Pirrong's Analysis Does Not Meet Accepted Event Study Standards. ............ 11

            1.   Pirrong's ███████████████████████. ........................................ 11

                 a.   Because Pirrong ████████████████████████ .............. 12

                 b.   Pirrong's analysis ██████████████ .......................... 13

            2.   Pirrong's Analysis ████████████████████ .................... 15

                 a.   Pirrong ██████████████████████ ...................... 16

                 b.   Pirrong ████████████████████████ .................. 17

                 c.   Pirrong's opinion has been excluded in this District for the very reason
                      that he failed to analyze other potential causal factors. .................... 18

            3.   Pirrong's Purported ████████████████████ ..................... 20

            4.   Pirrong Does Not Conclude ████████████████ ..................... 21

II. Pirrong's ██████████████ Theory Is Fundamentally Unreliable And
    Irrelevant For Reasons Unrelated To The Defects In His Event Study...............................23

CONCLUSION..........................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Am. Honda Motor Co., Inc. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ............................................................2, 8

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
   853 F. Supp. 2d 181 (D. Mass. 2012), *aff'd sub nom.*, *Bricklayers & Trowel
   Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st
   Cir. 2014) ................................................................................... passim

*Brown v. Burlington N. Santa Fe Ry. Co.*,
   765 F.3d 765 (7th Cir. 2014) ...........................................................17, 18

*Chapman v. Maytag Corp.*,
   297 F.3d 682 (7th Cir. 2002) ............................................................ passim

*Comcast v. Behrend*,
   569 U.S. 27 (2013) ..............................................................................2

*Cummins v. Lyle Indus.*,
   93 F.3d 362 (7th Cir. 1996) ..................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ....................................................................2, 7, 8, 25

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...................................................................4, 15, 18, 21

*Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund (LOCAL 66)*,
   579 F.3d 401 (5th Cir. 2009) ...........................................................19, 22

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................8, 25

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...........................................................17, 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ............................................................................9

*Hershey v. Pac. Inv. Mgmt. Co. LLC*,
   697 F. Supp. 2d 945 (N.D. Ill. 2010) ..................................................... passim

iii

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)...................................................................2

*In re Northfield Labs., Inc. Sec. Litig.*,
   267 F.R.D. 536 (N.D. Ill. 2010).................................................................10, 18

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007), *aff'd. sub nom.*, *In re Williams Sec.*
   *Litig. – WCG Subclass,* 558 F.3d 1130 (10th Cir. 2009)................................. passim

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999).................................................................................7

*Masters v. Hesston Corp.*,
   291 F.3d 985 (7th Cir. 2002) ......................................................................8

*Minasian v. Standard Chartered Bank, PLC*,
   109 F.3d 1212 (7th Cir. 1997) ................................................................8, 25

*Ray v. Citigroup Glob. Mkts., Inc.*,
   482 F.3d 991 (7th Cir. 2007) ...............................................................21, 22

*Robinson v. Davol Inc.*,
   No. 17-2068, slip op. (7th Cir. Jan. 22, 2019) ..............................................7

## FEDERAL RULES

FED. R. CIV. P. 23 ....................................................................................2, 5, 11

FED. R. CIV. P. 26 ......................................................................................14

FED. R. EVID. 702 ..............................................................................2, 7, 8, 17

## <u>INTRODUCTION</u>

In support of their class certification motion, Plaintiffs submit the expert report of Dr. Craig Pirrong, who opines that Kraft[1] caused artificial prices in the December 2011 ("Dec. 11") and March 2012 ("Mar. 12") wheat futures contracts, and thus Plaintiffs' alleged damages trading those contracts. Pirrong's opinion is critical to Plaintiffs' ability to meet the commonality and predominance requirements for class certification because his opinion is the only evidence Plaintiffs offer to support their theory that *Kraft's* conduct—as opposed to some other conduct or factor—caused artificial prices during the proposed class period.[2] Pirrong makes clear in his report that his opinions relate to class certification, Ex. 1, Pirrong Rep. ¶ 5 n.3, and everything in this Memorandum relates to Kraft's opposition to class certification.

Specifically, Pirrong's opinion is the only justification Plaintiffs provide for their proposed class period, which they attempt to (1) start on November 1, 2011, well before the Dec. 11 futures contract delivery period began on November 29; and (2) end in March 2012, over two months after Kraft had completely closed its Dec. 11 wheat futures and shipping certificate positions. Plaintiffs' overbroad proposed class period is a transparent attempt to manufacture damages because their own expert ███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████—the event that, until now,

---

[1] As used in this motion, "Kraft" refers collectively to the Defendants, Kraft Foods Group, Inc. and Mondelēz Global LLC.

[2] *E.g.*, Pl.s' Corrected Mem. In Supp. of Class Cert. at 7-8 (commonality satisfied because "Dr. Pirrong demonstrates that the common question of whether the Scheme inflated prices may be answered for all Class members by the same econometric event studies."); *id.* at 11 ("Plaintiffs and all Class members must show . . . the Scheme inflated futures prices during November and December 2011."); *id.* ("Dr. Pirrong has submitted specific opinions on . . . Kraft's artificial impact on prices," supporting commonality and predominance); *id.* at 12 (predominance satisfied because "[t]he event study methodology employed by Dr. Pirrong . . . provides a well-established means to prove on a class wide basis the price artificiality attributable to Defendants' manipulative acts"); *id.* at 13 (predominance satisfied because "Dr. Pirrong's analyses demonstrate that there is a well-recognized econometric methodology which will supply common proof of whether the Scheme inflated futures prices").

has been the mechanism through which Plaintiffs allege Kraft manipulated the futures market. *E.g.*, Am. Compl. ¶¶ 3, 5-6, 50-52, 54, 61, 88 (Dkt. No. 71); Ex. 4, Interrog. No. 5.

Additionally, Pirrong's opinion is the only basis on which Plaintiffs claim to have a model capable of measuring on a classwide basis damages supposedly caused by Kraft's actionable conduct, as opposed to some other conduct or cause, and consistent with Plaintiffs' liability theory as required by Rule 23(b)(3) and *Comcast v. Behrend*, 569 U.S. 27, 34-35 (2013).

Given the critical nature of Pirrong's opinions to Plaintiffs' ability to meet class certification standards, Seventh Circuit authority holds that this Court "must conclusively rule" on Kraft's motion to exclude Pirrong's opinions "prior to ruling on [Plaintiffs'] class certification motion." *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010). As Kraft demonstrates in this motion, the Court should exclude Pirrong's opinions that Kraft caused artificial prices in the Dec. 11 and Mar. 12 wheat futures contracts, because he uses no scientifically valid methodology to support his opinion that Kraft was the cause of any price artificiality during the proposed class period. Nor does Pirrong offer any other workable methodology for proving the causation element, which Plaintiffs must show before a class action may be certified. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 541 (S.D.N.Y. 2018) (denying class certification based in part on plaintiffs' expert's failure to propose an admissible causation methodology, which plaintiffs must establish for causation to be common question). Accordingly, his opinions fail to satisfy the standards for reliability and relevance set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## **BACKGROUND**

Pirrong's theory of causation is that Kraft caused artificial prices by ███████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████

Pirrong purports to demonstrate that ████████████████████████████████
████████████████████████████████████████████████████████ *Id.* ¶¶

4-8, 50. ██████████████████████████████████████ An event study is a

common technique used by economists to determine the cause of price movements in financial

instruments, including futures contracts. Ex. 1, Pirrong Rep. ¶ 50. The "event" analyzed is typically

some action taken in the market, or information injected into the market, that is evaluated to

determine its price impact. Here, however, Pirrong's analysis ███████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████

First, Pirrong's analysis is not ██████████████████████████████████
████████████████████████████████████████████████████ For example, Pirrong

opines ███████████████████████████████████████████████████████████

---

[3] The delivery period for the Dec. 11 wheat futures contract began after the close of trading on November 29, 2011. Ex. 3, Overdahl Rep. ¶ 15.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ Nor does Pirrong ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Pirrong's admission that ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ And any new event must be tied to Kraft in order for

Kraft to be liable for any resulting artificiality. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-

47 (2005). Pirrong ██████████████████

Pirrong's analysis also violates ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ For example, Pirrong's

analysis does not control for ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

4



*Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 955, 957 (N.D. Ill. 2010) (Keys, M.J.) ("*PIMCO*") (excluding experts, including Pirrong, who failed to distinguish between the price impact of the defendant's conduct versus other causes).

The deficiencies in Pirrong's analysis are not new. Pirrong's opinions were previously excluded in this District where, ████ Pirrong assumed that all of the alleged artificiality was attributable to the defendant's conduct, and made no scientific effort to separate the purported effect of the defendant's conduct from other non-manipulative causes, including other traders and systemic market factors. *See PIMCO*, 697 F. Supp. 2d at 957.[4]

Without a reliable event study, Pirrong's opinion that Kraft caused artificial prices lacks the methodological and quantitative support necessary to be admissible. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (holding expert's testimony should have been excluded because he failed to support his opinions with "any studies, tests or experiments to justify or verify his conclusions"); *PIMCO*, 697 F. Supp. 2d at 955, 957 (excluding experts, including Pirrong, who

---

[4] As explained in detail in Kraft's opposition to class certification, Pirrong's failure to apply accepted event study methodology means Plaintiffs' proposed damages model does not satisfy Rule 23(b)(3) and *Comcast*. Kraft Opp. to Class Cert. at 28-43.

failed to support opinions with reliable quantitative analysis). But even if his opinions were based on a reliable methodology (they are not), Pirrong's core theory— ██████████████████ ███████████████████████—is fundamentally unreliable and irrelevant for several reasons that independently warrant its exclusion.

First, despite opining that ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ Pirrong also did not ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ Pirrong's failure ████████████████ means his opinion "cannot fairly be characterized as scientific knowledge" and is not based on sufficient facts or data to be reliable or helpful to the trier of fact. *Chapman*, 297 F.3d at 688. ███████████████████████

Pirrong's theory is also unreliable and irrelevant because it is based on one of two demonstrably false assumptions: ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████



However, Pirrong does not define in his article ███████ what a "normal" pace of liquidation is, does not explain how much more "slowly" than "normal" is required to indicate manipulation, and cites no empirical study to support his ████████████ hypothesis. ███████ ████████████ This is precisely the type of flimsy expert testimony that the Court, as gatekeeper, should exclude.

### STANDARD OF ADMISSIBILITY FOR EXPERT TESTIMONY

The Supreme Court "assign[ed] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Those principles are embodied in Federal Rule of Evidence 702, which requires that expert testimony be (1) based on "sufficient facts or data," and (2) "the product of reliable principles and methods," which (3) the expert has applied "reliably to the facts of the case." The trial court's "gatekeeping obligation" applies to all forms of expert testimony, and requires the court to exclude opinion testimony that is not based on reliable methods or does not fit the facts of the case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

To be "reliable," an expert's methodology must display the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152. The proponent of the testimony must establish that "the proposed witness would testify to valid scientific, technical, or other specialized knowledge." *Robinson v. Davol Inc*., No. 17-2068, slip op. at 9 (7th Cir. Jan. 22, 2019) (quoting *Ammons v. Aramark Unif. Servs., Inc*., 368 F.3d 809, 816 (7th Cir. 2004)). The

expert's methodology must also be testable and replicable. *Daubert*, 509 U.S. at 590, 593-94; *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996). An expert's opinion must be excluded if it "supplies nothing but a bottom line" conclusion, *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997), or is based on the expert's "subjective belief or unsupported speculation," *Chapman*, 297 F.3d at 687.

"Relevancy" is established if the expert's testimony is helpful in determining a fact at issue. *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). To be relevant, an expert opinion must be based on "sufficient facts or data" and must "fit" the facts of the case. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. An opinion based only on the expert's say-so is unhelpful and irrelevant. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

*Daubert* and Rule 702 apply to expert testimony considered at the class certification phase of litigation. *Am. Honda Motor Co., Inc.*, 600 F.3d at 815-16. In *American Honda*, the Seventh Circuit stated that when "an expert's report or testimony is critical to class certification," as it is here, a "full *Daubert* analysis" should be performed before ruling on the plaintiff's motion for class certification. *Id*. In that case, the Seventh Circuit vacated the district court's order certifying a class, holding that the district court abused its discretion in declining to rule on the admissibility of the plaintiffs' expert's report. *Id*. at 816-19.

## ARGUMENT

Pirrong's opinion that Kraft caused artificial prices in the Dec. 11 and Mar. 12 wheat futures contracts does not comport with *Daubert* or Rule 702 and thus should be excluded. As demonstrated in Section I, Pirrong's event study methodology is unreliable because ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Additionally, as demonstrated in Section II, Pirrong's ███████████████ theory is fundamentally unreliable and unhelpful because Pirrong did not test his theory, and because his opinion is not testable, replicable, or based on sufficient facts or data. Rather, Pirrong's theory is based on demonstrably false assumptions about ████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████

## I.  Pirrong's Failure To Apply Generally Accepted Event Study Methodology Warrants Exclusion Of His Causation Opinion.

### A.  Accepted Event Study Methodology Requires, At A Minimum, That It Be Based On Actual Events And Control For Other Potential Causal Factors.

An event study is a statistical method used to estimate the financial impact of the revelation of previously concealed information on the price of a financial instrument. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280 (2014) ("'[E]vent studies' [are] regression analyses that seek to show that [] market price[s] . . . tend[] to respond to pertinent publicly reported events. . . . [including] alleged misrepresentations."); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 186 (D. Mass. 2012) ("*Bricklayers I*") ("An event study . . . often plays a 'pivotal' role in proving loss causation . . . many courts require them

9

in such cases."), *aff'd sub nom.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 97 (1st Cir. 2014) ("*Bricklayers II*"). Event studies are typically used in cases in which it is alleged that a defendant made false or misleading statements about a corporation on one date, and the corporation's stock price fell on a later date when the truth was revealed. An economist's event study will analyze the security's price movement between those two dates. *In re Northfield Labs., Inc. Sec. Litig.,* 267 F.R.D. 536, 548 (N.D. Ill. 2010); *see generally In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1272-73 (N.D. Okla. 2007) ("*Williams I*"), *aff'd. sub nom.*, *In re Williams Sec. Litig. – WCG Subclass,* 558 F.3d 1130 (10th Cir. 2009) ("*Williams II*").

Accepted event study methodology is summarized in a working paper prepared by renowned economists who perform event studies. *See* Ex. 9, T&D (1999). As they described it, and as cases confirm, event studies have the following steps:

- *First*, the expert must identify the event or events to be studied—*e.g.*, the false or misleading statement(s) or omission(s) and the curative disclosures that frame the class period. *Id*. at 7.

- *Second*, the expert must identify an event window during which stock price movements are calculated. Generally, that window opens directly before a particular misleading statement or material omission and concludes with the curative disclosure. *Id*. at 7-8.

- *Third*, the expert must control for causes of price movement other than the actionable events. *Id*. at 8-10. These potential causes include market effects such as economic changes, political concerns, industry or company effects unrelated to the actionable disclosure, or conduct by others. *Id*. Because prices of financial instruments rise or fall in response to a wide variety of factors, an event study must exclude industry effects unrelated to the actionable conduct and must take account of conduct by others that affects price. *E.g., In re Northfield Labs., Inc. Sec. Litig.*, 267 F.R.D. at 548; *PIMCO*, 697 F. Supp. 2d at 955.

- *Fourth*, the event period comes to an end when the facts are disclosed and the effect of that information is incorporated into the price of the security. Ex. 9, T&D (1999) at 7-8.

As detailed below, Pirrong's ██████████████████████████████████

███████████████████████████ ██████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████

**B.  Pirrong's Analysis Does Not Meet Accepted Event Study Standards.**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ However, Pirrong's methodology departs from generally accepted event study

methodology, and is unreliable, for four reasons.

**1.  Pirrong's** ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

▪  █████████████████████████████████████████████
  ████████████████████████████

▪  █████████████████████████████████████████████
  █████████████████████████████████████████████

11

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

      **a.**   **Because  Pirrong** ███████████████████████████
████████████████████████████████

The deficiency in Pirrong's methodology can be seen in his conclusion about ████████

Although Pirrong opines ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

Pirrong also opines ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

─────────────────

█ ████████████████████████████████████████████████████
████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

Indeed, foundational to his work, Pirrong opines ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██ **Pirrong's analysis concludes that** ████████████████████████████████████
████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ The delivery period for the

Dec. 11 futures contract began after the close of trading on November 29, 2011. At that time, the

market at least arguably could have learned for the first time that Kraft was standing for delivery.[6]

---

[6] Kraft does not concede that the market learned it was standing for delivery after the close of trading on November 29, 2011. Publicly available information only identifies Newedge (Kraft's broker) as stopping futures wheat in December 2011. Newedge represents many clients and, in fact, was stopping futures wheat on behalf of multiple clients in December 2011. Further, each of the named plaintiffs confirmed ████████████

*See* Ex. 3, Overdahl Rep. ¶¶ 15, 19. Significantly, however, Pirrong's analysis █████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

Given █████████████████████████, Pirrong assumes, without any basis, █████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████ This self-serving and unsupported assumption does not satisfy *Daubert*. *See Chapman*, 297 F.3d at 687-88 (ordering new trial where court improperly admitted expert testimony that "amount[ed] to nothing more than unverified statements unsupported by scientific methodology").

Multiple courts have held that an assumption that █████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████ *Williams II*, 558 F.3d at 1138; *Bricklayers I*, 853 F. Supp. 2d at 193-95. In *Williams II*, the Tenth Circuit affirmed the exclusion of expert testimony based on the expert's theory, seemingly embraced here by Pirrong, that the market progressively learned the truth about the defendants' fraud, so the expert could not point to any particular event

---

█████████████████████████████ Certain grain elevator employees speculated that Kraft might stand for delivery in December, but those employees confirmed in depositions they were speculating and did not know Kraft's plans related to delivery in December.

[7] Pirrong admits ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

for how the truth was revealed. 558 F.3d at 1138-39, 1143. In affirming the exclusion of such

unreliable expert testimony, the Tenth Circuit held:

> A plaintiff cannot simply state that the market had learned the truth by a certain
> date and, because the learning was a gradual process, attribute all prior losses to the
> revelation of the fraud. The inability to point to a single corrective disclosure does
> not relieve the plaintiff of showing how the truth was revealed; he cannot say, 'Well
> the market *must* have known.'

*Id*. at 1138 (emphasis in original). In the absence of any specific event, or some other "mechanism

for how the truth was revealed," *id*., the Tenth Circuit affirmed the district court's finding that the

expert's theory was unreliable because he "fail[ed] to then link the revelation of [the] truth to a

corresponding loss," *id*. at 1139.

### ▮ Pirrong's Analysis Is Unreliable Because ▮▮▮▮▮▮▮

It is black-letter law that to prove causation a plaintiff must demonstrate it was the

defendant's actionable conduct, not some other factor or conduct, that caused the plaintiff's loss.

*See Dura*, 544 U.S. at 346 ("plaintiff [must] prove that the defendant's misrepresentation (or other

fraudulent conduct) proximately caused the plaintiff's economic loss"); *PIMCO*, 697 F. Supp. 2d

at 955; *Bricklayers I*, 853 F. Supp. 2d at 190-91; *Williams I*, 496 F. Supp. 2d at 1272-73; *Williams

II*, 558 F.3d at 1139-40. In a commodity manipulation case, this means "the expert must [ ] conduct

some form of statistical analysis that isolates the defendant's conduct," so the court and the parties

can "distinguish between the effect on the price resulting from Defendant's [allegedly] unlawful

conduct and that caused by other factors." *PIMCO*, 697 F. Supp. 2d at 954-55. Failure to

"quantitatively consider the effect of other possible causes," and to apportion the amount of

artificiality caused by such other factors, render an expert's opinion inherently unreliable. *Id.* at

957; *see also Chapman*, 297 F.3d at 688.



**Pirrong**

Here, in fall 2011, the wheat futures market was subject to multiple potential influences, many of which were more substantial in size than the actions attributed to Kraft. While Pirrong

As a few examples:



*E.g., PIMCO*, 697 F. Supp. 2d at 954-55, 957; *Bricklayers I*, 853 F. Supp. 2d at 190 ("An event study that fails to disaggregate

---

[8] Plaintiffs had the same data Kraft relies on in this motion and thus were aware (or should have been) that

the effects of confounding factors must be excluded . . . the [price] movement could very well have been caused by other information released to the market on the same date."); Fed. R. Evid. 702.

Nor does Pirrong ███████████████████████████████████████████████████████████████

██████████████████████████████████ *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d

408, 422-23 (7th Cir. 2015) ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Brown v. Burlington N. Santa Fe Ry.*

*Co.*, 765 F.3d 765, 772-76 (7th Cir. 2014) (affirming exclusion of plaintiff's causation expert who, among other things, "fail[ed] to rule out obvious potential causes").

██ **Pirrong** █████████████████████████████████████████████████████

███████████████

Pirrong's failure to ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

Pirrong's treatment of █████████████████████████████████████████████

████████████████████████████

█ ████████████████████████████████████████████████████████████████

████████

█ ████████████████████████████████████████████████████████████████

██████████████



Nevertheless, Pirrong does not even attempt to ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ To

be reliable and admissible, an event study must do more than show that a price fell during a time

period—the event study must isolate price movements caused by the false statement or actionable

event from price movements caused by general economic news or other events. *Dura*, 544 U.S. at

342, 346; *Williams II*, 558 F.3d at 1137-40, 1143; *In re Northfield Labs., Inc. Sec. Litig.*, 267

F.R.D. at 548 (excluding expert who failed to properly isolate price movements caused by news

about defendant company).

> **c.  Pirrong's opinion has been excluded in this District for the very reason that he failed to analyze other potential causal factors.**

Pirrong's failure to account for other causes has previously resulted in exclusion of his

causation opinion in a Commodity Exchange Act manipulation case. In *PIMCO*, Pirrong

performed the same basic analysis he performs in this case. *See* Ex. 2, Pirrong Tr. 243:12-244:10,

---

███ Pirrong admit ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████ Magistrate Judge Keys excluded Pirrong's testimony because he failed to disaggregate and quantify the impact of other potential causes of price artificiality, such as the conduct of other market participants. *PIMCO*, 697 F. Supp. 2d at 955, 957. Specifically, the court concluded that Pirrong "neither attributed loss between Defendant's alleged unlawful conduct and that which was not fraudulent, nor did he quantitatively consider the effect of other possible causes." *Id*. at 957.

Magistrate Judge Keys' ruling follows a long series of cases holding that an expert opinion on causation is inadmissible if it is not supported by scientific analysis demonstrating that a defendant's actionable conduct—as distinguished from the conduct of other market participants or other causal factors—caused an allegedly artificial price. In *Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund (LOCAL 66)*, 579 F.3d 401, 405, 411 (5th Cir. 2009), the Fifth Circuit affirmed denial of class certification where the plaintiffs claimed that a "price was artificially . . . inflated as a result of the manipulation," and their class certification expert opined that their loss was "entirely or almost entirely attributable" to the defendants' alleged misconduct. *Id.* at 405 (quotation omitted). The Fifth Circuit found that "[the expert's] testimony was fatally flawed" because "he wedded himself to the idea that . . . [there] was only one [cause] . . . and conducted his event study based on that belief." *Id.* at 410. In affirming the expert's exclusion, the court stated: "We reject any event study that . . . [fails to separate causes and] . . . link[] the *culpable* [conduct] to the [alleged loss]." *Id.* (quotation omitted) (emphasis in original).

The court in *Bricklayers I*, 853 F. Supp. 2d at 190-91, excluded the plaintiffs' expert because he failed to isolate the effect of the alleged fraud from other industry as well as company-

specific news reported on the event days. The court held this confounded the event study and rendered it unreliable. *Id*.

The courts in the *Williams I*, 496 F. Supp. 2d at 1272-75 and *Williams II*, 558 F.3d at 1139-40, 1143, excluded plaintiffs' expert who likewise claimed to have performed an event study but failed to isolate the financial effects of the events being studied from all other things that influenced the price of the security.[10]

■ **Pirrong's Purported** █████████████████████████
█████████████████████████████████████████████

Pirrong's analysis also departs from accepted methodology, and thus is unreliable, because

████████████████████████████████████████████ As indicated above, Pirrong ████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████

| Date 2011 | Dec. 11 Contract Price[11] ($/bu) | |
|---|---|---|
| Nov. 3 | 6.3600 | |
| Nov. 4 | 6.3675 | |
| Nov. 7 | 6.3875 | |

---

[10] Pirrong states in his report that, █████████████████████████████████████
███████████████████████████████████████████████
█████████████████ Moreover, failing to ██████████
███████ hardly meets the *Daubert* standard. Pirrong was required to █████████████████████████████████████████████████
*PIMCO*, 697 F. Supp. 2d at 954-55, 957.

[11] *See* Ex. 12, Overdahl CFTC Rep. Ex. 17.

| Nov. 8 | 6.5700 | ████ |
| Nov. 9 | 6.4300 | ████ |
| Nov. 10 | 6.2000 | ████ |
| Nov. 11 | 6.1675 | ████ |
| Nov. 14 | 6.1575 | ████ |
| Nov. 15 | 6.3275 | ████ |
| Nov. 16 | 6.1675 | ████ |

██████████████

If all this artificiality is scientifically attributable to Kraft, there must have been new information related to Kraft in the market on each date. *See Williams II*, 558 F.3d at 1138-39. Pirrong ████████████████████████████████████████

██████████████████████████████████████████████

██████████████ Absent new information related to Kraft, all or some unknown portion of the supposed artificiality has some other cause. Pirrong's ██████████████████████

██████████████████████████████████████████████

*Dura*, 544 U.S. at 346 (plaintiff must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"); *Ray v. Citigroup Glob. Mkts., Inc.*, 482 F.3d 991, 994-95 (7th Cir. 2007) ("If the plaintiff cannot prove 'loss causation'— that is, the fact that the defendant's actions had something to do with the [price movements]—then the claim must fail.").

### 4. **Pirrong Does Not Conclude** ████████████████████ ████████████

Finally, Pirrong has no reliable basis for his opinion that ██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

21



. In the context of a class action, a full and corrective disclosure ends the proposed class period. *See* Ex. 9, T&D (1999) at 7-8; *Williams I*, 496 F. Supp. 2d at 1253 (explaining that class period began the day before a press release regarding company spin-off and ended the day of spin-off's bankruptcy filing); *Bricklayers I*, 853 F. Supp. 2d at 187 ("an economist should select as the event days to be studied the days the allegedly fraudulent misrepresentations were made and the days the market learned the truth"). Applying this principle in other circumstances, Pirrong has opined that when a party closes its manipulative positions, prices should quickly correct ending any market artificiality. *See, e.g.*, Ex. 5, Pirrong (2017) at 4; Ex. 13, Pirrong (2004) at 35; *see also* Ex. 14, Easterbrook (1986).

Here, however, Pirrong ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, by at least December 14, the market was fully apprised of Kraft's actions. But in an effort to push Plaintiffs' damages beyond the logical bounds of his own analysis, Pirrong ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pirrong's opinion is unsupported, conflicts with well-established event study methodology, and should be excluded.[12]

---

[12] Indeed, Pirrong's attempt to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

■      **Pirrong's** ███████████████ **Theory Is Fundamentally Unreliable And Irrelevant For Reasons Unrelated To The Defects In His Event Study.**

Without a reliable event study, Pirrong's causation opinions lack the methodological and quantitative support necessary to be admissible. *PIMCO*, 697 F. Supp. 2d at 955, 957 ("[S]ome form of quantitative statistical analysis is necessary" for an expert's causation opinion to be admissible); *see also Chapman*, 297 F.3d at 688 (holding expert's testimony should have been excluded because he failed to support his opinions with "any studies, tests or experiments to justify or verify his conclusions"). However, even if Pirrong's opinions were based on a reliable methodology (they are not), his causation theory contains defects that make it otherwise fundamentally unreliable and irrelevant.

Pirrong's ███████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████

─────────────────────
███████████████████████████████████████
████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

Pirrong's ████████████████████████████████ is unreliable and irrelevant for several reasons. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

■ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Clearly Pirrong cannot give a reliable and relevant opinion on ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Pirrong's failure to ████████████

████████████████ means it is not based on any scientific methodology as required by *Daubert*.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Nor is Pirrong's theory based on sufficient facts or

data to be helpful to the trier of fact. *Daubert*, 509 U.S. at 591.

Courts routinely exclude expert opinions when—as here—those opinions are based on

nothing more than the expert's own *ipse dixit*. As the Supreme Court has explained: "nothing in

either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence

that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that

there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522

U.S. at 146; *accord Minasian*, 109 F.3d at 1216 ("An expert who supplies nothing but a bottom

line supplies nothing of value to the judicial process.").

Moreover, contrary to Pirrong's brazenly unsupported and misleading assertions, ██████

████████████████████████████████████████     ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

25

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████

**FIGURE 1**



### CME SRW Open Interest Leading Up to Contract Expiry[1]

The pace of liquidation of the open interest in the December 2011 SRW wheat futures contract was not slow, and in fact was materially the same as the pace of liquidation for 19 other wheat futures contracts for the 45 days of trading leading up to the last day of trading for each contract.

Source: CME Datamine
Note: [1] Open interest is shown for the 45 trading days leading up to the last day of trading and on the last day of trading for the given contract.

Pirrong's ████████████████ is also inherently unreliable because ████████████
██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

Moreover, Kraft was not the only trader to maintain a long position through the proposed class period. Other traders maintained significantly larger long positions than Kraft, and even increased their positions throughout November 2011. Ex. 10, Overdahl Ex. 10A; Ex. 7, Overdahl Ex. 10, "long_firm" tab. In light of positions held by others, and their anonymity, the pace of liquidation communicated nothing unusual as to the market in general or Kraft in particular. Ex. 3, Overdahl Rep. ¶¶ 48-54. ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

        ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



▇▇▇ Moreover, Kraft was also not the only market participant who took delivery of futures wheat in September—at least 26 firms stopped futures wheat in September 2011, and 15 of them stopped more wheat than Kraft. Ex. 3, Overdahl Rep. ¶ 77. ▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

Finally, the only support Pirrong cites in his report for his ▇▇▇▇▇▇▇ theory is an article he published in 2017—after he was retained by Plaintiffs ▇▇▇▇▇▇▇ ▇▇▇—and in which Pirrong states that a market participant cornering the market can cause futures contracts "to liquidate more slowly than normal." Ex. 1, Pirrong Rep. ¶ 238 n.102 (citing Ex. 5, Pirrong (2017)). Pirrong does not define in his article (▇▇▇▇▇) what a "normal" pace of liquidation is, does not explain how much more "slowly" than "normal" is required to indicate manipulation, and cites no empirical study to support his "slower pace of liquidation" hypothesis.[15] P▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇. *Chapman*, 297 F.3d at 688 (holding that district court erred by not excluding expert who presented no proof that his theory was generally accepted in the scientific community).

---

[14] ▇▇▇▇▇▇▇▇

[15] Pirrong does not disclose in the article that he is retained by Plaintiffs in this matter.

28

## <u>CONCLUSION</u>

For the foregoing reasons, Kraft requests that the Court exclude the testimony of Dr. Craig Pirrong in consideration of Plaintiffs' class certification motion. To the extent the Court determines it needs more information to exclude Pirrong, Kraft requests an evidentiary hearing.

Dated: March 28, 2019

Respectfully submitted,

KRAFT FOODS GROUP, INC. and
MONDELĒZ GLOBAL LLC

/s/ *Dean N. Panos*

Dean N. Panos
J. Kevin McCall
Nicole A. Allen
Thomas E. Quinn
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

*Attorneys for Kraft Foods Group, Inc. and
Mondelēz Global, LLC*