IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY PLOSS, as Trustee for the HARRY PLOSS TRUST DTD 8/16/1993, on behalf of Plaintiff and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>KRAFT FOODS GROUP, INC. and MONDELEZ GLOBAL LLC,<br><br>    Defendant. | No. 15-cv-02937<br><br>Judge John F. Kness |

ORDER

Before the Court is Plaintiff's Motion Seeking Approval of the Plan and Form of Notice to the Class [365]. For the reasons set forth in the accompanying Statement, the motion is conditionally granted pending submission, on or before September 8, 2020, of amended proposed class notices that conform with the specific holdings set forth in the accompanying Statement. Following that submission, the Court will consider the proposed notices for final approval before they are issued to class members.

STATEMENT

I.    BACKGROUND

This is a class action brought by a class of option and futures traders alleging that Defendants manipulated prices in the Chicago Board of Trade's wheat futures market. (Dkt. 71.) Plaintiffs contend Defendants conduct was tortious and in violation of the Commodities Exchange Act and Sherman Act. On January 3, 2020, this Court certified the following class under Rule 23 of the Federal Rules of Civil Procedure:

All persons who either:

    a.    purchased a CBT December 2011 or a CBT March 2012 futures contract after October 31, 2011 except that purchases of CBT March 2012 futures contracts made after December 14, 2011 qualify for inclusion in the

> Class only to the extent they were made in liquidation of a short position in the CBT March 2012 contract (whether an outright short position or as part of a spread position) which was sold between November 1 and December 14, 2011 inclusive; or
>
> b. sold put options or purchased call options on the CBT December 2011 contract or on the CBT March 2012 contract after October 31, 2011 except that sales of put options or purchases of call options on the CBT March 2012 contracts made after December 14, 2011 qualify for inclusion in the Class only to the extent they were made in liquidation of a position in the CBT March 2012 contract (whether an outright position or as part of a spread position) which was initiated between November 1 and December 14, 2011 inclusive.

*Ploss, et al., v. Kraft Foods Group, Inc., et al.*, 431 F. Supp. 3d 1003, 1022-23 (N.D. Ill. 2020). Kraft petitioned the United States Court of Appeals for the Seventh Circuit to decertify the class under Rule 23(f) (Dkt. 334-1), but the Seventh Circuit denied the petition. (Dkt. 345.) Under a scheduling order set by the Court on June 26, 2020 (Dkt. 364), Plaintiffs filed a "Motion Seeking Approval of the Plan and Form of Notice to the Class" (Dkt. 365) on June 30, 2020.

## II. MOTION SEEKING CLASS NOTICE APPROVAL

Plaintiffs propose a seven-point notice plan that includes direct mail, publication notice, and creation of a case website. (Dkt. 367 at 6-9.) The notices provide information regarding the topics set forth in Rule 23(c)(2)(B), including the nature of the action, definition of the class, and procedures for opting out of the class. (Dkt. 367-1; 367-2.) Defendants filed a response brief (Dkt. 370), Plaintiffs replied (Dkt. 374), and the Court held a related hearing on August 10, 2020 (Dkt. 376).

Defendants object to the proposed notice plan on three grounds: (1) the notices understate class members' document preservation obligations; (2) the notices do not inform potential class members that they may be subject to discovery if they do not elect to opt-out of the class; and (3) the opt-out procedures are not fair because they require a wet signature and the deadline for opting out (60 days from the date the notice is issued) does not provide adequate time and should be longer (120 days from the date of receipt). (Dkt. 370.) In their briefing, Defendants further objected to Plaintiffs' proposed web site URL; however, during the August 10 hearing, the parties agreed that www.2011wheatfuturesclassaction.com is an acceptable URL.

2

A.     Legal Standard

Under Rule 23, a district court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This court-approved class notice is intended to "ensure that a class member's decision to opt out or join the class is an informed choice." *Mullen v. GLV, Inc.*, 334 F.R.D. 656, 661 (N.D. Ill. 2020). The notice "must clearly and concisely state in plain, easily understood language" information regarding:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In assessing whether notice is adequate, district courts cannot rely solely on disputes among the parties before it; rather, "[t]he agency problems which [class] actions create require that the district judge be vigilant in protecting the procedural rights of class members." *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 683 (7th Cir. 1987).

B.     Issues Disputed Between the Parties

The parties disagree on three fronts: two concern the language of the notices, and one concerns the procedures for opting-out. The Court addresses each in turn.

First, regarding document preservation, Plaintiffs propose the following language:

> Plaintiffs intend to seek to obtain information from the futures exchange and potentially other sources that may supply the information needed to show each Class member's relevant transactions in SRW futures and options contracts and damages. However, Class Counsel encourages Class members to preserve records of their transactions in CBT

3

> December 2011 and CBT March 2012 Contracts (and options on such futures contracts) traded after October 31, 2011 (including any monthly statements for October 2011). Although the Court has not yet determined the relevance (if any) of Class member purchases and/or sales of physical wheat, Class members are also encouraged to preserve records of any purchases and/or sales of physical wheat between November 1, 2011 and March 14, 2012.

Defendants propose the following:

> In order to determine whether any class member is entitled to claim money or benefits, class members may be required to produce trading records for all accounts in which they have a financial interest, showing all trades in the CBT December or March 2012 Contracts made after October 31, 2011. Class members also may be required to offset claims for money or benefits with any gains made on cash market transactions. Accordingly, class members who wish to claim money or benefits in this action should preserve records of their transactions in CBT December 2011 and CBT March 2012 Contracts (and options on such futures contracts) traded after October 31, 2011 (including any monthly statements for October 2011). Class members who wish to claim money or benefits in this action should also preserve records of any purchases and/or sales of physical wheat in the cash market between November 1, 2011 and March 14, 2012.

    The first difference the Court must resolve is whether the notice will "encourage" class members to preserve their trading data or instead tell them they "should" preserve that data. With respect, the Court sees little practical difference between these two hortatory, noncompulsory terms. That said, and faced with a dispute that must be resolved, the Court believes "should" is slightly more emphatic than "encourage"; and given that there is little harm in a more emphatic statement regarding the importance of document preservation, the notice will inform class members that they "should preserve" the relevant records.

    Next, the Court must decide what statement the notice will make regarding the purpose of document preservation. Defendants suggest that the notice inform

class members that they "may be required to offset claims for money or benefits with any gains made on cash market transactions." Conversely, class counsel prefer to inform class members that (1) "the Court has not yet determined the relevance (if any) of Class member purchases and/or sales of physical wheat" and (2) "Plaintiffs intend to seek to obtain information from the futures exchange and potentially other sources that may supply the information needed to show each Class member's relevant transactions in SRW futures and options contracts and damages."

In the Court's view, neither of these alternatives is necessary or appropriate. Class members need only be informed that they *should* preserve their transaction data: for present purposes, class members do not need to know what the relevance of the trading data might be, what the Court may or may not rule in the future, or who else class counsel is going to ask for information. They *need* to know only that they should preserve the data. Class members' potential curiosity does not, by itself, justify adding fluff to a document in which, like a sonnet, every word must matter.

In sum, with respect to preservation of trading records, the notices should read:

> Class members may be required to produce trading records for all accounts in which they have a financial interest, showing all trades in the CBT December or March 2012 Contracts made after October 31, 2011. Class members should preserve records of their transactions in CBT December 2011 and CBT March 2012 Contracts (and options on such futures contracts) traded after October 31, 2011 (including any monthly statements for October 2011). Class members should also preserve records of any purchases and/or sales of physical wheat in the cash market between November 1, 2011 and March 14, 2012.

Turning to the second issue with the notices' language—whether they should refer to the possibility of discovery—Defendants propose that the notices include the following sentence: "If you do not opt out and choose to remain in the class, and you seek to claim damages, you may be subject to discovery, including a deposition, related to Kraft's individual defenses and your damage claim." Plaintiffs object that it is "unprecedented" to use language that "brazenly and explicitly links Class members' decision to request exclusion with Kraft's threat to take depositions and other discovery of Class." (Dkt. 374 at 2.) Plaintiffs also point out that other courts have rejected similar language. *See Garcia v. Elite Labor Serv., Ltd.*, No. 95 C 2341., 1996 WL 33500122, at *1 (N.D. Ill. July 11, 1996); *Wingo v. Martin Transp., Inc.*, No.

5

2:18-CV-00141-JRG, 2018 WL 6334312, at *5 (E.D. Tex. Dec. 5, 2018). Defendants have not, in either their response brief or at oral argument, distinguished Plaintiff's cited authority or offered any case where a court has approved language similar to what Defendants propose. Instead, they claim their proposed language is necessary because "class members have a right to know what may be required of them while they still have an opportunity to opt out." (Dkt. 370 at 6.)

Defendants' proposed language is neither necessary nor appropriate. It is inaccurate to suggest that the only way for class members to avoid the possibility of discovery is to opt out now. Rather, discovery regarding individual claims for damages will not take place until after Plaintiffs have obtained a judgment in their favor with respect to liability. If that occurs, there will be a separate, post-trial notice that will include information regarding the scope of potential discovery. Any class members that want to avoid discovery altogether by declining to press their claims could walk away at that point. It is inaccurate to suggest otherwise by implying that the only way to avoid discovery is to opt out now.

As their final area of contention, the parties present three discrete disputes concerning the opt-out process: (1) whether the period to opt out should last 60 days (Plaintiffs' view) or 120 days (Defendants' view); (2) whether the opt-out period should begin at the time the notice is issued (Plaintiffs) or at the time it is received (Defendants); and (3) whether a "wet" signature should be required when class members submit their opt-out decision electronically (Plaintiffs), or an electronic signature will be sufficient (Defendants).

*First*, the Court finds 120 days is preferable because it gives class members more time to make their decisions. At the same time, because the litigation will continue apace during the 120-day period, a longer interval will not in any way prejudice the class members who decline to opt out.

*Second*, the Court finds that the opt-out period should run from the date of issuance, not the date of receipt. In this regard, the Court's ruling tracks the well-known and workable "mailbox rule." *See Burton v. United States*, 202 U.S. 344, 386 (1906) (citing *Adams v. Lindsell* (1818) 1 Barn. & Ald. 681). While the date of receipt will differ in each case and may be difficult to prove, setting the postmarked date of issuance as the starting point for the opt-out period will provide an easy-to-understand and clear marker.

*Third*, the Court finds that a so-called "wet" signature—defined as a signature written on a printed piece of paper in the class member's own hand—should be required. A signature provides a measure of proof that lessens the potential for

disputes regarding the opt-out decision. Moreover, the class members in this case are sophisticated participants in the CBOT futures market; they undoubtedly have access to the resources necessary to meet the printed signature requirement. It should not, therefore, prove overly burdensome for class members to print out their opt-out decision, sign it, and scan it for submission.

    C.    <u>Procedural Rights of Class Members</u>

Having resolved the disputed issues, the Court finds that the proposed notice plan is adequate to protect the procedural rights of class members under Rule 23. The notice plan provides for multiple avenues of communication, including direct mail to all "large traders" (as the Commodity Futures Trading Commission defines that term) in the markets described in the complaint. (Dkt. 367 at 6.) It also provides for notices to be sent to traders identified in *U.S. Commodity Futures Trading Commission v. Kraft Foods Group, Inc.*, 15-cv-02881 (N.D. Ill.) as having participated in those markets, as well as "regular for delivery" grain elevators that are known to participate in those markets. (Dkt. 367 at 7-8.) In addition, the plan calls for notices to be sent to clearing firm members and futures commissions merchants who may have customers in the class, with instructions to forward the notice to those customers. (*Id.*) Finally, the plan includes more passive measures, including the maintenance of a website and two publication notices in *Stocks & Commodities Magazine*. (*Id.*)

The Court finds that the plan is "the best notice that is practicable under the circumstances" and includes "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *First*, the substance of the notices "clearly and concisely state in plain, easily understood language" all of the information required by Rule 23(c)(2)(B). *Second*, the procedure outlined in the plan reflects a reasonable effort to identify and send direct communications to all the individual members that can be identified, and its provision for communications to third-parties and use of paid advertising and publication notice serve to bolster those efforts. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process."); *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676–77 (7th Cir. 2013) (similar); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (similar). *Third*, and finally, the opt-out procedures, as refined above, are adequate to protect the right of individual class members to make an informed choice whether to opt out. *Mullen*, 334 F.R.D. at 661.

7

SO ORDERED in No. 15-cv-02937.

Date: August 31, 2020

_____
JOHN F. KNESS
United States District Judge

8